UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
UNITED STATES OF AMERICA  :
             :
   -against-     :   08 CR 674 (SCR)
             :
RICHARD GENIN,     :
             :
       Defendant. :
------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>DEFENDANT RICHARD GENIN'S PRETRIAL MOTIONS</u>

Defendant RICHARD GENIN, by his attorneys, Briccetti, Calhoun &

Lawrence, LLP, submits this Memorandum of Law in support of his pretrial

motions for an Order

  (1)  suppressing physical evidence pursuant to Fed. R. Crim. P.

     12(b)(3);

  (2)  suppressing certain statements pursuant to Fed. R. Crim. P.

     12(b)(3);

  (3)  requiring the government to provide a bill of particulars

     pursuant to Fed. R. Crim. P. 7(f) and certain discovery under

     Fed. R. Crim. P. 16;

(4)    directing the government to make disclosure pursuant to <u>Brady</u>

<u>v. Maryland</u>, 373 U.S. 83 (1963);

(5)    directing the government to make certain pretrial disclosures;

and

(6)    for such further relief as the Court may deem just and proper.

For the reasons that follow, the relief he requests should be granted.


**FACTS**

Defendant Richard Genin is charged in a one-count indictment with the

possession of videos containing child pornography in violation of 18 U.S.C.

§2252A(a)(5)(B).  See Affirmation of Clinton W. Calhoun, III, Exh. A.[1]  He has

pleaded not guilty to that charge.

On April 1, 2008, at about 6:15 a.m., FBI agents executed a search warrant

for child pornography at defendant's apartment in New Rochelle, New York.

(Exh. B).  The warrant was issued the day before, upon an application by one of

the agents which described the background of his investigation, including the

arrest of an Italian suspect identified as OPERATOR and several e-mail

_____

[1] All of the exhibits referenced in this memorandum are attached to the
accompanying Affirmation of Clinton W. Calhoun, III.

communications to OPERATOR from defendant regarding alleged pornography. (Exh. C, pp.19-22). [2] It was alleged in the complaint that child pornography was being received at defendant's apartment (Exh. B), although the search warrant application indicated that shipments were made to a different address. (Exh. C, pp.25-26). In any event, a search warrant was issued for defendant's apartment. (Exh. C, p.59).

The agents removed defendant from his home at the time of the search and, while the search was going on, conducted an interview of him. Defendant allegedly made statements in the interview that are summarized in the complaint. (Exh. B).

Pursuant to the warrant, certain DVDs, videotapes and other items were seized from the defendant's apartment. (Exh. C, pp.60-63). An unidentified FBI "analyst" reviewed several of the videos and tapes that were seized and found that they contained child pornography, a term defined in 18 U.S.C. §2256. (Exh. B).

Defendant was arrested and presented on a complaint later in the day on April 1, 2008, and subsequently was indicted.

---

[2] Exhibit C is a lengthy exhibit and, for convenience, page numbers are indicated that correspond to the control numbers stamped at the bottom of each page.

**ARGUMENT**

**POINT I**

**THE SEARCH WARRANT IN THIS CASE WAS NOT
SUPPORTED BY PROBABLE CAUSE AND THE ITEMS
SEIZED PURSUANT TO IT MUST BE SUPPRESSED.**

The Court issued a search warrant on March 31, 2008, authorizing the
search of defendant's apartment for child pornography and related items.  On April
1, 2008, FBI agents executed that warrant and seized a number of items, including
the alleged child pornography upon which this prosecution is based.  However,
because the warrant was not supported by probable cause and because the specific
information in the warrant that was applicable to defendant was stale, the warrant
was invalid and the items seized pursuant to it must be suppressed.

**A.**      **Applicable Standard.**

A valid search warrant under the Fourth Amendment must be supported by
probable cause.  To make a determination if probable cause is present, a magistrate
judge has to examine the application for the warrant and make a common sense
account of all of the circumstances.  Illinois v. Gates, 462 U.S. 213, 238 (1983).
While probable cause has been described as a "fluid concept - turning on the
assessment of probabilities in particular factual contexts —," Gates at 232, it

4

nevertheless is a term that had meaning to the Framers who drafted the Fourth Amendment.  The court to which an application for a warrant is presented must not "serve merely as a rubber stamp for the police."  United States v. Ventresca, 380 U.S. 102, 109 (1965).  Rather, the court has to be neutral and detached in its assessment of the application's sufficiency and has to require that probable cause be shown to the court before the application can be granted, if the Constitution's protection is to be realized.

As part of the probable cause determination, the facts in the application supporting a search warrant must be sufficiently close in time to the issuance of the warrant and the search so that probable cause can be said to exist as of the time of the search, not simply as of some time in the past.  United States v. Wagner, 989 F.2d 69, 75 (1993).  In other words, where the information is stale, probable cause does not exist.  Walczyk v. Rio, 496 F.3d 139, 162 (2d Cir. 2007).  While there has been some relaxation of the staleness rule where the affidavit shows a pattern of continuing criminal activity, United States v. Martino, 664 F.2d 860, 867 (2d Cir. 1981), or where possession of child pornography is alleged, United States v. Irving, 452 F.3d 110, 125 (2006), the reviewing courts continue to maintain a temporal requirement as a factor in determining probable cause and to reject information that has become stale.

As set forth below, the application in the present case, for a variety of reasons, lacked probable cause.  Far too much of it was generic and not related specifically to the facts and the defendant in this case.  The specific information that was set forth was wholly inadequate and was stale, and thus did not justify the issuance of the warrant.

**B.**    **Lack of Probable Cause.**

(1)    Improper Reliance Upon "Analyst(s)" and Vague
        Information Not Linked to Defendant Or His Residence.

Upon the foregoing principles, the magistrate judge should have rejected the application for a search warrant in this case.  A close reading of the application would have revealed that it was insufficient and did not merit the issuance of a warrant.  Further, even though the application accused the defendant of possessing child pornography, the non-generic information in it as to him specifically was stale.  Thus, probable cause was lacking.

In the first place, it appears that neither the magistrate judge nor the agent applying for the warrant ever viewed any of the allegedly pornographic items that were recovered from the Italian suspect referred to as OPERATOR and that formed the basis for the warrant application.  To the extent that anyone viewed

them at all, it apparently was done by some unknown, unidentified "analyst" for the FBI's Innocent Images Unit whose credentials, qualifications or expertise are nowhere disclosed.  This "analyst" allegedly viewed approximately 150 movies seized from OPERATOR (Exh. C, p.21).  This same "analyst" or perhaps a different one, the application does not say, also reviewed some of the videos referenced in certain e-mails allegedly from defendant and found that they contained "child pornography."  (Exh. C, p.26).  Again, there is no disclosure of what qualifications, if any, this analyst possessed to make such a judgment, nor is the basis for that judgment stated.  The magistrate judge was not even told the analyst's name.

It also is significant that the movies and videos reviewed by the unknown analyst(s) were never established to be in the defendant's possession.  As to the 150 movies seized from OPERATOR, none is identified by name and none is alleged to have ever been in defendant's possession.  (Exh. C, p. 21).  As to the videos "referenced in the e-mails from" defendant to OPERATOR, again none is identified by name and none is alleged to be part of the 150 movies seized from OPERATOR.  Further, the agent states only that the analyst "reviewed of [sic] a number of the videos referenced in the e-mails".  (Exh. C, p.26).  He does <u>not</u> disclose what that number is, nor does he identify what specific videos were

reviewed.  As a result, there was no way for the magistrate judge to know if the video or videos viewed by this analyst were ever in the possession of defendant, or merely were ones he wanted (Exh. C, p.24 [¶16b]) or simply were the subject of his commentary.  (Exh. C, p.23 [¶15]).

Importantly, the evaluation of the alleged child pornography from OPERATOR that defendant is accused of ordering and possessing was not done by the magistrate judge and was not done even by the agent applying for warrant.[3] Rather, this function was delegated to and done by an "analyst" about whom the court was told absolutely nothing.  There may even be more than one analyst involved.  To make matters worse, the agent does not disclose to the court what movies or videos the analyst or analysts viewed or whether any of them was ever actually in the possession of the defendant.  On this record, the magistrate judge did not make and could not have made a "neutral and detached" determination that

---

[3] This case thus differs from United States v. Jasorka, 153 F.3d 58, 61 (2d Cir. 1998) where the Court found the law unclear as to "whether a judicial officer, acting on an application for a violation of §2252, based lascivious exhibition of the genitals, may rely on an agent's assertion that he has reviewed the material and has found the photographs include such conduct."  Here, the agent could make no such assertion because he had not reviewed the material.  The Jasorka court found that the good-faith exception nevertheless applied but, as argued below, that exception should not apply to this case.

child pornography was in fact involved or that it was in defendant's possession.
He was not given information sufficient to permit such a determination.

    2.    <u>Staleness</u>.

To compound the lack of probable cause, the information presented in the agent's application as to defendant is stale.  The agent advises that he has reviewed a summary prepared by an FBI "analyst" of over 15 e-mails from defendant.  (Exh. C, p.23).  It again is unstated who the analyst is and what his or her qualifications or training (if any) is, or why an analyst is even needed to summarize "over 15 emails."  It is again unstated if this analyst, or some other analyst, had a role in reviewing the OPERATOR movies or the "number" of videos referenced in the e-mails.  In any event, six of the e-mails from defendant are excerpted.  (Exh. C, pp.23-25).  While the e-mail excerpts express appreciation for young female models, they do not describe child pornography.[4]  All of the excerpts are dated in 2005 and 2006, with the last one dated August 3, 2006.  Further, the latter e-mail suggests defendant's interest was waning and he bought

---

[4] As noted, the agent asserts that an analyst reviewed "a number of the videos referenced in the e-mails" and determined they contained child pornography.  (Exh. C, p.26).  There is no information provided in his affidavit as to what number, what videos and what constituted the pornography, let alone what qualification the analyst possessed to make such a judgment.

only one video.[5]  The search warrant was not issued until March 31, 2008, almost

20 months after the last e-mail.

The current information about defendant presented in the application did not

support a finding of probable cause.  There was no "mail cover" to determine if he

was receiving mail from pornographers.  There was no surveillance of him.  There

were no current e-mails and the fake solicitations from law enforcement meant to

entice defendant resulted in no response from him.  (Exh. C, p.26).  Defendant's

name and home address reportedly appeared in various databases, such as Con

Edison's (Exh. C, p.23), but the shipping address was different, suggesting that

any videos that were shipped did not go to defendant's apartment but to an entirely

different location.  (Exh. C, pp.25-26).  In short, there was no information given to

the magistrate judge upon which it could have been determined in a reliable,

neutral and detached way that defendant in fact possessed child pornography in his

home on March 31, 2008.

Although the staleness prohibition has been relaxed in cases involving

allegations of continuing activity, as noted above, it has not been eliminated.

---

[5] This becomes more significant when the agents later tried to entice
defendant to buy more and received no response from him.  This should have
raised the possibility that his interest in, and perhaps his possession of, such
material had ended.  This in turn should have necessitated more current
information about defendant's activities if a warrant were to issue.

United States v. Singh, 390 F.3d 168, 181-182 (2d Cir. 2004).  This case differs in important respects from United States v. Irving, 452 F.3d 110 (2d Cir. 2006), in which the Second Circuit approved a search warrant to seize a suspected pedophile's computer in his home.  The agents had seen the computer in the home when executing an arrest warrant for Irving based on pedophilia charges and advised the court that "pedophiles often use computers to exploit children, by making travel arrangements ... or sharing data ..." Id. at 115.  Based on these observations and the unique facts of the case, the court issued a search warrant two days after the arrest warrant was executed.  Here, there was no prior arrest warrant, and hence no prior determination of probable cause.  Defendant here was not charged with pedophilia and was not alleged to use his computer as quoted above.  In fact, he was not even alleged to have downloaded child pornography onto his computer; the alleged pornography was in DVD format and was sent to a different address, not to defendant's home.  Moreover, there was no information in the application that defendant had even communicated with anyone by e-mail or otherwise in almost 20 months.  Finally, there were no current observations from inside his apartment.

* * *

11

Defendant contends that the showing of probable cause was insufficient to support the search of his home.  What non-generic information there was, as set forth in the application, was sparse and relied improperly on one or more unidentified analysts, whose credentials and training were unstated.  The lack of information goes on: also unstated were (1) the videos the analyst or analysts actually viewed, (2) what connection, if any, those videos had to defendant or to his home, and (3) the basis for the analysts' conclusion that child pornography was present.  Finally, the information was stale as to defendant and it could not be said that probable cause, even if it existed at one time, still existed as of the time of the search.  The search of defendant's home therefore was improper and the items seized in that search must be suppressed.

**C.      The Good-Faith Exception is Inapplicable.**

The Supreme Court has held that the exclusionary rule does not apply to evidence seized "in objectively reasonable reliance on" a warrant it issued by a detached and neutral magistrate judge, even if the warrant is determined to be invalid.  United States v. Leon, 468 U.S. 897, 922 (1984); United States v. Falso, 544 F.3d 110 (2d Cir. 2008).  This "good faith" exception, however, does not apply in the following circumstances:

(1) where the issuing [judge] has been knowingly misled;
(2) where the issuing [judge] wholly abandoned his or
her judicial role; (3) where the application is so lacking
in indicia of probable cause as to render reliance upon it
unreasonable; and (4) where the warrant is so facially
deficient [such as by failing to particularize the place to
be searched or the things to be seized] that reliance upon
it is unreasonable.

United States v. Falso, id. at 125; United States v. Moore, 968 F.2d 216, 222 (2d

Cir. 1992). In such circumstances, it would not be objectively reasonable to rely

upon the legal judgment of the issuing judge. Further, the burden is on the

government to show the objective reasonableness of the agents' reliance on the

warrant's issuance. United States v. George, 975 F.2d 72, 77 (2d Cir. 1992).

As detailed in the foregoing section, the indicia of probable cause in the

agent's application was so lacking that reliance upon it was unreasonable.

According to the application, neither the agent nor the issuing judge ever viewed

the alleged pornography. Instead, it was reviewed by an "analyst," whose

qualifications, experience, and even whose name are entirely absent. It is also

unstated in the warrant what movies or videos the "analyst" viewed and what their

connection, if any, was to defendant or his home. The "analyst" is reported to

have found child pornography in some of the videos, but it is not stated which

videos or what the basis was for the conclusion. Further, it appears that any

videos defendant purchased were shipped to a location other than his home. Finally, there was no e-mail activity for 20 months prior to the warrant and defendant had not responded to any of the authorities' attempts to entice him with offers of child pornography.

Upon this showing, probable cause was woefully lacking. The magistrate judge could not possibly have made a detached and neutral assessment of probable cause when so little information as to defendant was provided, even less that the agent was personally familiar with, and so much of it stale. There was practically no effort to bring current the stale information, and what effort there was suggested that defendant was no longer interested. The generalized allegations that permeate the application do not provide probable cause for a specific search — that still needs to be particularized. Here, it was not. Further, because the same agent applied for and executed the warrant, he would have known of the application's contents, and therefore its deficiencies. He would have known, or should have known, that the magistrate could not make a detached and neutral determination on the information provided, and he therefore could not have reasonably and in good faith relied upon the issuance of the warrant to justify this search.

## POINT II

## THE STATEMENT ALLEGEDLY MADE BY
## DEFENDANT MUST BE SUPPRESSED AS WELL.

At the time that the agents arrived to execute the search warrant, defendant was removed from his home and placed in a car where he was interviewed. Defendant knew that his home was being searched and made statements to the agents during the interview.  (Exh. B).

Where there has been an illegal search and seizure, the exclusionary rule bars the introduction of statements derived or resulting therefrom.  Wong Sun v. United States, 371 U.S. 471, 484 (1963); United States v. Pena, 961 F.2d 333, 338 (2d Cir. 1992), see also United States v. Santa, 180 F.3d 20, 25 (2d Cir. 1999); United States v. Eng, 971 F.2d 854, 859 (2d Cir. 1992).  Here, the statements by defendant derived from the illegal search described in the foregoing point and hence were "fruit of the poisonous tree."  Defendant was removed from his home and placed in a car to be interviewed contemporaneously with the illegal search. He clearly knew that his home was being searched and made statements.  (Exh. B). Since those statements were not and would not have been made in the absence of the illegal search, but instead were derived from that search that was being conducted at the very time the statements were made, they must be suppressed.

## POINT III

## THE GOVERNMENT SHOULD BE REQUIRED
## TO PARTICULARIZE AND MAKE AVAILABLE
## THE VIDEOS IT ALLEGES CONTAIN
## CHILD PORNOGRAPHY.

Although the indictment charges defendant with possession of child pornography, it does not specify what videos or images form the basis of that charge. Some videos have been shown to defense counsel during discovery, but it is evident that more videos were seized from defendant's apartment at the time the search warrant was executed. (Exh. C, pp.61-63).

In order for the defendant to be properly advised of the charge against him and to prepare his defense, the government should be required to identify the videos it alleges contain child pornography and upon which the charge against defendant is based. If the videos are limited to those shown during discovery, the government can merely state that. Otherwise, it should provide a bill of particulars pursuant to Rule 7(f), Fed. R. Crim. P., and make any additional videos available for inspection pursuant to Rule 16.

## POINT IV

## THE GOVERNMENT SHOULD BE REQUIRED TO MAKE DISCLOSURE PURSUANT TO <u>BRADY v. MARYLAND</u>.

If the government possesses any reports or summaries indicating that videos seized from defendant do not contain child pornography, those reports or summaries would constitute <u>Brady</u> material and should be disclosed.  For example, if the videos depict images of general interest or images that do not constitute illegal pornography, that should be the subject of a <u>Brady</u> disclosure to the defense.

The government of course recognizes its obligation to disclose evidence favorable to the accused when it is material to guilt or punishment.  <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963).  This duty covers not only exculpatory information but also information that could be used to impeach government witnesses.  <u>Giglio v. United States</u>, 405 U.S. 150 (1972).  However, the disclosure has to be sufficient for defense counsel to be able to make "effective use" of it, <u>United States v. Coppa</u>, 267 F.3d 132, 142 (2d Cir. 2001), and not be denied access to exculpatory information known only to the government.  <u>United States v. LeRoy</u>, 687 F.2d 610, 619 (2d Cir. 1982).

In view of the nature of the charge brought against the defendant, the government should be directed to disclose under <u>Brady</u> any information it has that may be exculpatory.

## POINT V

## THE COURT SHOULD DIRECT THE GOVERNMENT TO MAKE CERTAIN PRETRIAL DISCLOSURES.

The defense cannot adequately prepare for trial unless the government produces a witness list, an exhibit list, witness statements and impeachment material, and a detailed description of any Rule 404(b) evidence it intends to offer. These items are all "material to preparing the defense."  Fed. R. Crim. P. 16(a)(1)(E)(i).  Moreover, all of these requests are calculated to facilitate the orderly presentation of evidence and avoid unnecessary delays at trial.  In addition, the government should be directed to certify when it has completed its discovery disclosures.

## A.  Witness List

This Court clearly has the discretion to order the government to produce a witness list.  United States v. Cannone, 528 F.2d 296, 299 (2d Cir. 1975).  Some of the factors the courts have considered in determining whether to exercise this discretion are (i) whether the indictment charges only non-violent offenses and the defendant does not have a criminal record involving crimes of violence, (ii) whether the trial will largely involve testimony relating to documents, (iii) whether production of the witnesses' names will not likely lead to the witnesses' failure to appear at trial, and (iv) whether the indictment alleges offenses occurring over an extended period of time.  United States v. Turkish, 458 F. Supp. 874, 881 (S.D.N.Y. 1978), aff'd, 623 F.2d 769 (2d Cir. 1980), cert. denied, 449 U.S. 1077 (1981); accord, United States v. Cannone, 528 F.2d at 300; United States v. Earls, 2004 WL 350725, at *9 (S.D.N.Y. 2004); United States v. Falkowitz, 214 F.Supp.2d 365, 395 (S.D.N.Y. 2002); United States v. Rueb, 2001 WL 96177, at *7 (S.D.N.Y. 2001).

Some of these factors argue in favor of requiring a witness list here. Moreover, it would be no burden on the government to identify its witnesses before trial, and it would serve only to "level the playing field" in this case, not give some sort of improper advantage to the defense.

As in <u>United States v. Falkowitz</u>, <u>supra</u>, the Court should direct the government to provide a witness list thirty days before trial.

## B.  Exhibit List

Moreover, the Court can and should order the government to identify its trial exhibits well in advance of trial.  <u>United States v. Earls</u>, 2004 WL 350725 at *9; <u>United States v. Falkowitz</u>, 214 F.Supp.2d at 391; <u>United States v. Turkish</u>, 458 F. Supp. at 881.  The Court should direct the government to provide an exhibit list before trial, which identifies the exhibits by description and Bates-number (or, if there is no Bates-number, by some other identifying characteristic).

## C.  Witness Statements and Impeachment Material

As to witness statements and impeachment material (<u>Jencks</u>, 18 U.S.C. § 3500, <u>Giglio</u>), it is understood that the Court cannot <u>compel</u> the government to make production of <u>Jencks</u>/3500 material prior to trial.  However, the Court does have "the authority to determine, as a matter of sound case management, when the Government shall disclose <u>Brady</u> and <u>Giglio</u> material."  <u>United States v. Morales</u>, 280 F.Supp.2d 263, 275 (S.D.N.Y. 2002); <u>accord</u>, <u>United States v. Madrid</u>, 302 F.Supp.2d 187, 193 (S.D.N.Y. 2003).  Typically, <u>Giglio</u> material is inextricably

intertwined with <u>Jencks</u>/3500 material.  Moreover, under Rule 611(a) the Federal Rules of Evidence, the Court has wide discretion over the mode and order of proof at trial.  This is relevant here because in the event the defendant has insufficient time to read, digest, and follow-up on the <u>Jencks</u> and <u>Giglio</u> material for particular witnesses prior to their testimony at trial, the Court would have the authority to delay cross-examination of these witnesses, or direct that they be re-called at a later date.

Under the circumstances of this case, if witness statements and impeachment material are not provided substantially before trial, the defense will <u>not</u>, at least with respect to some of the witnesses, have sufficient time to read, digest, and follow-up on the material before cross-examining those witnesses.  In that event, the defense may have no choice but to move pursuant to Rule 611 either to continue the testimony of government witnesses or to re-call them.  If, on the other hand, the witness statements and impeachment material are provided well before trial, no such motion should be necessary.


## D.  <u>Rule 404(b) Evidence</u>

As to Rule 404(b) (similar act) evidence, the government is required to "provide reasonable notice in advance of trial . . . of the general nature of any such

evidence it intends to introduce at trial." That notice period should be at least thirty days, if not more. <u>United States v. Reddy</u>, 190 F.Supp.2d 558, 576-77 (S.D.N.Y. 2002) (government conceded that thirty days notice was reasonable; court ordered forty-five days notice); <u>United States v. Nachamie</u>, 91 F.Supp.2d 565, 577 (S.D.N.Y. 2000) (one month notice ordered). In fact, the government should be directed to provide such notice as soon as it determines what 404(b) evidence, if any, it will seek to introduce, but not later than 45 days before trial, in case the defense needs to investigate such evidence.

## E.  **Completeness of Discovery**

Finally, the Court should direct the government to confirm when discovery is complete. Too often, discovery is provided much later than Rule 16 contemplates, and frequently continues up to and during trial. Such belated disclosure clearly compromises the defendant's right to a fair trial and to adequate time and notice in order to prepare his defense. Further, the government knows when additional material is expected. It is not too much to require the government to confirm that all such material is in hand and all discovery has been made before the case is deemed ready for trial.

## CONCLUSION

For the foregoing reasons, the Court is asked to grant the pretrial motions of Richard Genin and to afford him such further relief as the Court deems just and proper.


DATED:      White Plains, New York
            December 5, 2008

                          Respectfully submitted,

                          BRICCETTI, CALHOUN & LAWRENCE, LLP

                     By:  s/_____
                          Clinton W. Calhoun, III (CC 4126)
                          81 Main Street, Suite 450
                          White Plains, NY  10601
                          (914) 946-5900

                          ATTORNEYS FOR DEFENDANT
                          RICHARD GENIN

TO:   Sarah Krissoff, Esq.
      Assistant United States Attorney
      300 Quarropas Street
      White Plains, NY 10601