**BRICCETTI, CALHOUN & LAWRENCE, LLP**
**81 MAIN STREET, SUITE 450**
**WHITE PLAINS, NY 10601**
**(914) 946-5900**


July 31, 2009



<u>BY HAND AND ECF</u>
Hon. Stephen C. Robinson
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, NY   10601


Re:     <u>United States v. Richard Genin</u>
        08 Cr. 674 (SCR)

Dear Judge Robinson:

On behalf of defendant Richard Genin ("Genin"), this letter is submitted to address the applicability of the "good faith" exception to the exclusionary rule to this case.  This letter follows (1) the Court's earlier decision in this case concluding, among other things, that the search warrant application failed to establish probable cause, and (2) the release by the government of additional discovery after that decision that, the defense submits, casts a new light on the issue of good faith and whether the government has met its burden with respect to that issue.

To summarize the facts briefly, Genin was arrested on April 1, 2008, and charged in a complaint with possession of child pornography in violation of 18 U.S.C. §2252A(a)(5)(B).  He subsequently was indicted on that charge.  At the time of his arrest, Genin's apartment in New Rochelle was searched by FBI agents pursuant to a search warrant issued by Magistrate Judge George Yanthis on March 31, 2008.  The agents seized a number of videos and other items as a result of the search.

After the indictment, Genin filed a motion to suppress the videos and other items seized in his apartment on the grounds that the application submitted in order to obtain the search warrant failed to establish probable cause.  Your Honor agreed and, in a Memorandum Decision and Order dated January 26, 2009, held that the warrant application lacked probable cause because it failed to provide the magistrate with "sufficient information for the magistrate to make an independent determination that the videos ... contained sexually explicit conduct."  (Decision

Hon. Stephen C. Robinson, U.S.D.J.
Re:  08 Cr. 674 (SCR)
July 31, 2009
Page 2

at 19).  The application had merely alleged in conclusory fashion that the videos sought contained "child pornography" without further elaboration or description and without appending copies of the alleged pornographic images.  That submission thus did not permit the magistrate judge to make a meaningful evaluation of the evidence to determine if probable cause existed. Your Honor also found an absence of information in the application linking videos described in e-mails attributed to Genin with any videos depicting sexually explicit conduct that were seized from the YVM Operator, whose arrest apparently triggered this investigation.

However, Your Honor nevertheless denied suppression in the January 26 Decision, based on the good faith exception to the exclusionary rule under United States v. Leon, 468 U.S. 897 (1984).  According to the Decision, the exception applied because the requirement of appending a copy or including a reasonably detailed description of the proscribed material is "relatively new and, at least within the Second Circuit, 'unclear.' [Citing United States v. Jasorka, 153 F.3d 58, 61 (2d Cir. 1998)]."  (Decision at 21).  Further, Your Honor noted that the warrant's deficiency in this case was "novel in that it is one step removed from the problem described" in other-circuit cases, which involved materials described as "lascivious," and therefore the import of those cases was obscured.  Id.  The Court also found that, although probable cause was lacking, the issue was a close one and that reasonable minds could differ about it.  Thus, Your Honor concluded that the agents' reliance on the magistrate's probable cause determination was reasonable.

The Court concluded its discussion of the good faith exception by warning that, in future cases, it would view "quite differently" an agent's failure of the sort exhibited in this case.  Id.

Following the January 26 Decision and pursuant to a request made by the defense, the government provided additional discovery.  Specifically, it provided an 8-page FBI report (the "Report") that (1) excerpts selected e-mails by Genin, (2) identifies Genin's home address and shipping address, (3) contains an "Analyst's"[1] "observations" of certain enumerated videos, and (4) summarized other information pertaining to Genin.  The Report is attached to this letter as Exhibit A.

In light of the January 26 Decision, the defense asked the Court for permission to address further the issue of good faith and Your Honor agreed.  For the reasons that follow, the Court is asked to conclude that the government has not met its burden with respect to the good faith exception in this case and to grant Genin's motion to suppress.

---

[1] The reported "observations" of the Analyst were incorporated into the agent's affidavit submitted to the magistrate judge in order to obtain the search warrant.  Affidavit ¶19.  The search warrant, the affidavit, and the return were attached to Mr. Genin's original motion papers.

Hon. Stephen C. Robinson, U.S.D.J.
Re: 08 Cr. 674 (SCR)
July 31, 2009
Page 3

**REASONS WHY THE GOOD-FAITH EXCEPTION SHOULD NOT APPLY**

The applicable standards for a good-faith inquiry were set forth in the Court's January 26 Decision. (Decision at p.20). Under the facts and circumstances of this case, particularly as illuminated by the government's recent discovery, Genin maintains that the exception is not warranted in this case. Specifically, he contends that the warrant application knowingly or recklessly misled the magistrate judge and that it was so lacking in probable cause that reliance upon it was unreasonable. United States v. Leon, 468 U.S. 897, 922 (1984); United States v. Falso, 544 F.3d 110, 125 (2d Cir. 2009). The defense submits that no well-trained officer could reasonably have relied on the magistrate's authorization of the search in this case.

At the outset, it is also important to remember that it is the government's burden to show the agents' reliance on the warrant's issuance was objectively reasonable, not Genin's burden to show it was unreasonable. United States v. George, 975 F.2d 72, 77 (2d Cir.1992). It is a burden not met by the government in this case.

1.      The Court's Decision on Probable Cause Was Based On Clear Principles,
        Was Not New Or Novel And Was Not A Close Call,
        and Should Be Fully Applied to this Case.

The Court stated in its prior decision that its probable cause finding against the government is "relatively new and, at least within the Second Circuit, 'unclear' [citing Jasorka]." However, the Second Circuit's Jasorka decision was rendered in 1998, almost ten years prior to the warrant application in this case, and it did not disturb the district court's decision that the agent's mere assertion that certain photos constituted "lascivious exhibition of the genitals" under 18 U.S.C. §2256(2)(E) was insufficient and that probable cause therefore was lacking. Instead of analyzing the probable cause issue, the Second Circuit proceeded to the good faith issue and upheld the denial of the motion to suppress on that ground. However, it did not overrule or invalidate the district court's decision on probable cause, or even express disagreement with that decision. Nor has it done so in any case since 1998. No one researching case law in the Second Circuit in 2008 on the issue of probable cause could miss Jasorka or its obvious message: conclusory assertions alone by an agent as to child pornography, without details and without copies of the images, do not establish probable cause and are not approved in the Second Circuit. The law in the Second Circuit pre-Jasorka may have been "unclear," 153 F.3d at 61, but it was much less so after Jasorka.

Hon. Stephen C. Robinson, U.S.D.J.
Re:  08 Cr. 674 (SCR)
July 31, 2009
Page 4

To put a finer point on it, the Jasorka decision gave the agent in this case no reason to believe his probable cause showing was sufficient.  In fact, quite to the contrary, it strongly suggested the showing was deficient, as Your Honor held.  It may be that the agent was counting on the good-faith exception to bail him out, à la Jasorka.  If so, it is a practice that is ethically dubious and should be discouraged.  No law enforcement agent should be able to submit a deficient or even marginal showing of probable cause while counting on the good-faith exception, and then claim to be acting in good faith.  In fact, such conduct is not in good faith.

Following Jasorka, the law became clearer still with decisions from other circuits.  Specifically, decisions in cases such as United States v. Brunette, 256 F.3d 14 (1st Cir. 2001), United States v. Battershell, 457 F.3d 1048 (9th Cir. 2006) and United States v. Syphers, 426 F.3d 461 (1st Cir. 2005), firmly establish the necessity in "lascivious exhibition" cases "to append the images or provide a sufficiently specific description of the images to enable the magistrate judge to determine independently" if child pornography is involved.  Syphers, id. at 467.  Both Brunette and Syphers contain explicit warning that agents failing to follow this approach will face substantial risk that their applications will be found insufficient.  Those decisions were rendered in 2001 and 2005, respectively.

The Court also noted in its prior Decision that the warrant affidavit's defect - the agent's bare conclusion that videos contained "child pornography" - was "novel in that it is one step removed from the problem described in cases outside of the district, in which the agents had concluded that the allegedly illegal materials were 'lascivious' - thus obscuring the import of those cases [citing Brunette and Jasorka]."  (Decision at 21).  The defect in this case is indeed "one step removed," but it is one step in the wrong direction - i.e., the defect here actually makes the warrant affidavit less descriptive and thus more inadequate than those in Brunette and Jasorka.  In those cases, at least the court's attention at least was focused on the particular subsection of 18 U.S.C. §2256(2)(A) at issue, the "lascivious exhibition" subsection.  Here, the magistrate judge was not focused on any subsection by the affidavit, only informed broadly that the videos contained "child pornography."  If the description of images as containing "lascivious exhibition" is inadequate, a fortiori a description of images as containing "child pornography" is even more inadequate.  Respectfully, the import of Brunette and Jasorka was not so obscure that the agent could not have figured out that supplying an even less descriptive affidavit was the wrong way to go.  Yet, that is precisely what happened in this case.

The Court's previously expressed view that the lack of probable cause was "a close issue and 'certainly one upon which reasonable minds can differ [citing Falso, 544 F.3d 128-129],'" should also be re-examined in light of the government's disclosure of the FBI Report attached as Exhibit A.  As discussed in the next section of this letter, that Report essentially exposes the fact

Hon. Stephen C. Robinson, U.S.D.J.
Re:  08 Cr. 674 (SCR)
July 31, 2009
Page 5


that the agent knew nothing of the actual content of the videos he sought to seize.  He had not
viewed the videos himself, nor did he obtain any description at all of their actual content from the
analyst.  Further, as pointed out in Genin's original motion, the agent did little or nothing to
update the stale information he did have or to determine if Genin in fact had any interest in child
pornography (rather than child erotica), or to connect any video mentioned in the e-mails
attributed to Genin with any video seized from OPERATOR, much less any video seized from
OPERATOR that contained child pornography.  So viewed, especially with the new discovery,
the ruling on the lack of probable cause was not such a close call - in baseball terms, it was out
by a mile.

        Thus, upon analysis, the defense contends that the Court's prior ruling did not resolve
unclear law, or a novel deficiency in the affidavit, or a close call on probable cause.  In fact, the
law was reasonably clear; the deficiency in the affidavit, to the extent it was novel, was novel in
that it was worse than those of prior cases; and the showing of probable cause was significantly
deficient.  The reasons to apply the good faith exception in this case therefore fall away, one by
one.

        Your Honor also concluded that in future cases, a different view would be taken in the
future of an agent's failure to provide a reasonably detailed description to a magistrate judge.
The Court actually quotes the identical warning from Brunette.  (Decision at p.21).  But the
Brunette warning was issued in 2001.  It is respectfully submitted that the future had arrived well
before the warrant affidavit in this case was presented to a judicial officer.  That affidavit should
not be exempted from the consequences of its obvious defect or held to a looser standard than
would apply in a "future case."  Said another way, Mr. Genin should not be denied relief under a
standard to be applied in the future that was readily foreseeable before the warrant in his case was
drawn.  The government and its agents had plenty of warning as to the correct standard, and Mr.
Genin simply asks that it be applied to his case.


2.      Discovery Reveals That No One Had Determined That
        The Images Were In Violation of 18 U.S.C. §2256.

        The FBI Report provided by the government since the Court's decision and attached as
Exhibit A, illuminates a defect that goes to the heart of the affidavit.  It may also provide an
explanation as to why, in the face of the legal authority cited in the previous section, there was no
attempt by the agent to describe the alleged "child pornography" in his affidavit.

Hon. Stephen C. Robinson, U.S.D.J.
Re:  08 Cr. 674 (SCR)
July 31, 2009
Page 6

        In his warrant affidavit, the FBI agent advised the magistrate judge that an FBI analyst had reviewed a number of videos referenced in e-mails ascribed to Genin and had "confirmed that the videos contained child pornography." (Affidavit, ¶19).  The term "child pornography" is defined elsewhere in the affidavit as a "visual depiction of a minor involved in sexually explicit conduct as defined in 18 U.S.C. §2256(8)(A) and (C)." (Affidavit, ¶56).  The agent thus informed the Court that the analyst had concluded that the videos that were reviewed contained child pornography in violation of the statute cited above.

        The problem is that the report of the FBI analyst does not support that assertion. Preliminarily, it is important to note that the agent himself had not reviewed the videos and thus was not in a position to elaborate on the description (or lack thereof) of the images or to answer any questions about them if asked by the magistrate judge.  The agent was thus entirely dependent on the analyst and her review of videos, and ultimately therefore so was the magistrate judge.

        In the FBI Report, the analyst reports that she viewed a number of videos enumerated on page 5 (Genin 244 attached) and placed into groups by the analyst.  Under a column headed "Contained Child Pornography," she records "Yes" for each grouping.  However, nowhere in her report does she indicate what definition of "child pornography" she applied.  The report is entirely silent on that, but there is ample reason to conclude that she did <u>not</u> apply the definition found in the warrant affidavit: a visual depiction of a minor involved in sexually explicit conduct as defined in 18 U.S.C. §2256(8)(A) and (C).

        First, the analyst did not describe at all, or attach copies of, any of the "child pornography" she purports to have found.  Rather, she simply indicates "Yes" as to every group of videos she reviewed under the column "Contained Child Pornography."[2]  In this way, the report is just as deficient and uninformative as the warrant affidavit is on the subject of the actual content of the videos.  The agent, relying on this report, could not have known that actual content, and thus could not have communicated it to the magistrate judge.  Further, as stated, he had not viewed the videos himself, and thus had no knowledge from any source as to any illegal content.

_____

        [2] Several of the groups contain as many as five videos.  The "Yes" designation as those groups leaves unclear and unanswered whether all of the videos, or some, or one in the group contained the alleged child pornography.

Hon. Stephen C. Robinson, U.S.D.J.
Re:  08 Cr. 674 (SCR)
July 31, 2009
Page 7

        The fatal blow to the affidavit comes when some of the videos purportedly observed by
the analyst are measured against the standard and definitions set in 18 U.S.C. §2256.  The video
of "Anja" and several in the "Anastasya" series simply do not display anything approaching
"sexually explicit conduct."  What they display instead is a girl by herself, clothed in either beach
attire or underwear, going through a lengthy series of poses.  However, in these videos, there is
no (i) sexual intercourse, (ii) bestiality, (iii) masturbation, (iv) sadistic or masochistic abuse, or
(v) lascivious exhibition of the genitals or pubic area of any person.  In other words, there is no
"sexually explicit conduct" in these videos as that term is defined at §2256(2)(A) and hence no
"child pornography" as that term is defined at §2256(8).

        Yet, the analyst labeled these videos as containing child pornography.  The likeliest
explanation for this is that the analyst was applying a different - and far broader - definition of
child pornography than the one provided in §2256(8).  These videos simply do not meet the
standard of §2256(8), so the analyst must have used a different standard.[3]  Other videos reviewed
by the analyst may or may not have met the standard §2256(8) if it had been applied, but there is
no suggestion in the report that it was applied or that a different standard was applied for some
videos and not others.  Thus, it is reasonable to conclude that a broad definition of "child
pornography," one far more expansive than §2256(8), was used by the analyst in her review of
the videos.

        In this case, it is evident that the analyst failed to employ the legal definition of "child
pornography" in her viewing or to include any description or attach any images she saw to her
report.  It is equally evident that the agent failed to engage in any viewing at all and failed to
make sure the analyst upon whom he relied employed the correct definition of "child
pornography."  He therefore had no knowledge of the actual contents of the videos and no basis
to assert that the videos contained child pornography as that term is defined by federal law.
These failures undermine any claim the government could make to "good faith" in this case,
because they resulted in the magistrate judge being seriously misled as to a crucial fact: whether
the FBI had determined that the videos in issue contained child pornography as it is defined by
statute.  The failures also constitute a deficiency in probable cause far deeper and more serious
than previously known, which the magistrate judge could not have seen.  At a minimum, these

_____

        [3] It is also conceivable that the analyst did not view these videos at all, or stated falsely
that they contained child pornography.  Genin's point is this: there is no way to view the "Anja"
and some of the "Anastasya" videos and see "child pornography" as it is defined in §2256(8).
Genin also pointed out in his original motion papers that the affidavit discloses nothing of the
analyst's background, training or expertise in this area, all of which frankly seem highly suspect.
The Report sheds no light on these questions.

Hon. Stephen C. Robinson, U.S.D.J.
Re:  08 Cr. 674 (SCR)
July 31, 2009
Page 8


failures and omissions evince recklessness.  Rivera v. United States, 928 F.2d 592, 604 (2d Cir. 1991).  With the magistrate judge having been given such error-laden and insufficient information, his issuance of a warrant could not have been reasonably relied on by the agent. The agent thus cannot lay claim to proceeding in "good faith."

        Under these circumstances, the Court should conclude that the government did not meet its burden and that "good faith" exception does not apply.


3.        The Affidavit Employed Language and Techniques
          That Were Deceptive and Misleading.

        The closer I inspected the affidavit upon which the search warrant was issued, the more it became apparent that not only was the substantial deficiency in probable cause concealed from view, but that something else was amiss.  There was a subtle but persistent borrowing of phrases from the e-mails attributed to Genin and seeding those phrases into the portions of the affidavit describing OPERATOR's child pornography.  It seems apparent that this was done to compensate for a hole in the affidavit Your Honor previously noted: "The absence of information linking the particular videos that the affidavit describes as depicting sexually explicit conduct and as appearing on the YVM [Young Video Models] websites."  Decision at 18.  Instead, a linguistic trick was employed to suggest the presence of a link for which no information was in fact presented.  Further, the trick tended to obscure the fact that e-mail correspondence attributed to Genin did not describe anything that could be construed to be child pornography under 18 U.S.C. §2256, a fact which Your Honor also recognized (Decision at 17-18) but the magistrate judge who issued the warrant may well have missed because it was obscured.

        A couple of examples of the borrowing of e-mail phrases and transferring them will illustrate the point:

        (1)     It is important to recognize that, the emails attributed to Genin do
    not describe child pornography, as that term is defined at 18 U.S.C. §2256.  At
    most, they evidence an interest in child erotica, but they do not describe, or
    disclose an interest in, sexually explicit conduct.  Thus, on page Genin 24, ¶16c,
    Genin writes: "The two single girl videos each for Daphne and Kristina are
    fantastic!  They are gorgeous.  I love their tiny outfits and the way they pose."
    (Underlining not in original).

Hon. Stephen C. Robinson, U.S.D.J.
Re:  08 Cr. 674 (SCR)
July 31, 2009
Page 9

The underlined language echoes an earlier paragraph in the affidavit, at Genin 21, ¶9, in which the agent describes an FBI report on OPERATOR'S videos.  He states that "in many of the videos, the minors are dressed in 'string' lingerie or are completely nude, and are posed such that their genitals are the focus of the image ...  On the website, the lingerie worn by the girls was often auctioned to those who purchased the movies."  There was no need for the agent to describe the clothing; it was irrelevant to the issue of child pornography, and clearly there was no evidence Genin ever purchased any of the lingerie, but it did suggest a link between OPERATOR'S pornography and Genin.  Likewise, his description of the minors as "posed" and his reference to them as "girls" (the only point in the affidavit he uses that term) also serve as a link to Genin's e-mail.

(2)      Another instance is found on page Genin 24 ¶16d in which Genin identified, twice no less, "Daphne #2" as his favorite video.  In an earlier e-mail, ¶16b, Genin actually orders "D2 Daphne 2," among others.  In ¶9, the agent stated, in describing the videos on OPERATOR'S website, that they "were listed with letter and number combinations such as 'D2,' indicating the first initial of the victim and the number of the movie."  Initially, this sentence is out-of-place, stuck between two sentences that emphasize the lingerie worn by the models.  Moreover, the example the agent chooses, "D2", clearly links to Genin's clear expression that D2 is his favorite video.  The agent also labels the minor a "victim," meaning of course Daphne, which is the only time in the relevant section of the affidavit he uses that term.  The sentence therefore draws attention to itself by its placement and the fact that it uses "victim" for the first (and only) time, and then resonates even more loudly when the e-mail excerpt of "D2" is reached.  Nothing about the actual content of "D2" is ever disclosed, however.

In addition to this linguistic sleight-of-hand, there is language employed in the affidavit that, upon close inspection, says far less than it purports to.  This language seems intended to create impressions in the reader (i.e., the magistrate judge) that are not warranted by the actual facts that are presented.  Thus, in ¶10 of the Affidavit (Genin 21), the agent states that in OPERATOR'S videos, "nearly all of the minors appear nude or partially nude."  Thus, the minors were either nude or they were not; in other words, they were nude or clothed.  The sentence, which seems sordid at first, loses meaning upon closer inspection.

Hon. Stephen C. Robinson, U.S.D.J.
Re:  08 Cr. 674 (SCR)
July 31, 2009
Page 10


Another example: the next sentence, in further describing OPERATOR'S videos, states that "the minors are engaged in sexual acts, or are depicted with their legs spread, or the camera lens zoomed in close on their pubic region, thereby clearly exposing the minors' genitals." (Affidavit ¶10, Genin 21-22)(Emphasis added).  There is no effort to quantify or describe these alternatives.  One of them, the "legs spread" alternative, is not, without more, even pornographic.  Given the deliberate vagueness of these assertions, it is impossible to know exactly what is depicted on the videos.  Sentences like the one quoted above say little or nothing, and of course there is no effort to describe the content of any particular video, let alone one named in the e-mail correspondence.

There are other examples of both the linguistic trick of linking the e-mail to OPERATOR'S pornography and to the slippery and elusive language in the affidavit.  To test these observations, I consulted Dr. Robert A. Leonard, a professor of linguistics and chair of the department at Hofstra University.  His expertise lies in the application of the science of linguistics to issues of law and a copy of his curriculum vitae is attached as Exhibit B.  Dr. Leonard was asked to review the search warrant affidavit and other relevant documents in this case and to advise of any conclusions he reached.

Dr. Leonard's report is attached hereto as Exhibit C.  In his report, he discusses the principles of language and the unspoken rules and conventions to which we adhere.  Central to his analysis is the schema, a term used by psychologists to refer to the knowledge frameworks that make our communication with one another not only efficient but possible.  By what we say to one another, we trigger a schema that provides a wealth of associations and connections that supply a framework of what is not said but is understood, at least potentially.  However, as Dr. Leonard describes, this form of communication opens the  door to the possibility of misunderstanding, mis-communication or deception.

When Dr. Leonard applies these principles to this case, the search warrant affidavit does not fare well.  He finds that it invoked the schema of child pornography but did so without specific information or adequate facts to support, or legitimize, the invocation of that schema.  The agent's language, and particularly his selective quotation of e-mails attributed to Genin, contribute heavily to the schema, which Dr. Leonard finds that the agent had clearly bought into and was able to pass on to the magistrate judge.  Dr. Leonard found the affidavit to function as a piece of advocacy and adjudication, rather than a presentation of facts and information.  The effect, according to Dr. Leonard, was to link Genin to the schema of child pornography, but without linking him to evidence of child pornography.

Hon. Stephen C. Robinson, U.S.D.J.
Re:  08 Cr. 674 (SCR)
July 31, 2009
Page 11


        Dr. Leonard concludes his report by finding that the affidavit misled the magistrate judge, not only by failing to present sufficient facts to show criminal misconduct, but also by invoking the schema of child pornography and creating a false impression that there was sufficient evidence or facts to connect Genin to criminal misconduct.  Such an affidavit, built as it was upon artifice, and its intended effect on the magistrate judge undermine any claim that could be asserted to the good-faith exception.

        Judge Dennis Jacobs, in his dissent in United States v. Falso, 544 F.3d 110, 135 (2d Cir. 2009), found that, in the affidavit in that case, "the misleading effect is achieved by artifice that carefully confuses a very important question of fact."  So, too, the affidavit in this case.  Artifice, and artful language, confuse and obscure the fact that absolutely no link was ever shown between OPERATOR'S child pornography, as defined in 18 U.S.C. §2256, and Genin, as expressed in the e-mails attributed to him.  Without that link, the search warrant should never have been issued, and the author of that language could not rely upon the issuance of the warrant in good faith.


                                     **CONCLUSION**

        The government's claim to the good-faith exception in this case is undone by (1) the lack of legal support for its probable cause showing, which could not be validated merely by submitting to a magistrate judge and hoping he signed off on it; (2) the fact that the indicia of probable cause, beyond the absence of any description of "child pornography," was woefully inadequate because the agent had not viewed the videos himself and the analyst, at best, applied a far broader definition of "child pornography" than the federal criminal law does, in addition to the staleness and insufficiency of the factual content of the affidavit; and (3) the language of the affidavit, by using a linguistic device and slippery and ultimately empty phases, had the potential for misleading the magistrate judge into believing that a connection had been shown between OPERATOR'S pornographic videos and the e-mails attributed to Genin.  Any one of these should be enough to deny application of the good-faith exception; the combination of all of them is fatal.

        This was the agent's error, not the magistrate judge's.  As Judge Jacobs further noted in Falso, id. at 136, it would be "somewhat disingenuous, after having gone to the [district judge] with the paltry showing seen here, to suggest . . . that at bottom it was the [judge] who made the error and the search and seizure are insulated because the officer's reliance on that error was objectively reasonable."  Quoting United States v. Zimmerman, 277 F.3d 426, 438 (3d Cir. 2002).  Here, the affidavit lacked a legal basis for sufficiency, was utterly deficient in its factual basis for a probable cause finding, and carried language that, purposefully or recklessly, created a

Hon. Stephen C. Robinson, U.S.D.J.
Re:  08 Cr. 674 (SCR)
July 31, 2009
Page 12


serious risk of misleading the magistrate judge.  All of this was done by the same agent who
executed the warrant.  Under the circumstances, he could not have acted in "objectively
reasonable reliance on a warrant issued by a detached and neutral judge."  United States v. Leon,
468 U.S. 897 (1984).  In other words, he could not have acted in good faith.

        For the foregoing reasons, the Court is respectfully asked to grant Genin the relief he
requests and suppress the items seized pursuant to the search warrant that was issued.

                                        Respectfully submitted,

                                        s/

                                        Clinton W. Calhoun, III

CWC/jlr

cc:     AUSA Sarah Krissoff (by hand and ECF)